**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 18, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CHAD BACK, a/k/a Overflow,

    Defendant - Appellant.

No. 25-6099
(D.C. No. 5:23-CR-00348-G-1)
(W.D. Okla.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **McHUGH**, **BALDOCK**, and **ROSSMAN**, Circuit Judges.
_____

A federal jury convicted Chad Back of several crimes related to a drug-distribution conspiracy. He asks us to reverse his convictions, arguing that the government violated his due-process rights by delaying his prosecution, and that the district court erred by admitting a coconspirator's statements. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] We have honored the parties' request for a decision without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). This decision is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

I

Mr. Back's prosecution arose from allegations that he organized drug deals from an Oklahoma prison. Federal agents used a confidential informant to conduct a series of controlled buys—drug purchases monitored and directed by law enforcement. The informant initiated the buys by contacting Mr. Back in prison on his unauthorized cellphone. Mr. Back then arranged for a third person to deliver drugs to the informant.

II

The controlled buys occurred in 2019, and Mr. Back's indictment alleged crimes as late as July 2020. But a grand jury did not indict him until August 2023. Mr. Back moved to dismiss the indictment, arguing that the government's delay in securing it violated due process.

Statutes of limitations provide the main protection against "overly stale criminal charges." *United States v. Lovasco*, 431 U.S. 783, 789 (1977) (internal quotation marks omitted). Yet the Due Process Clause still "has a limited role to play in protecting against oppressive delay." *Id.* Preindictment "delay solely to gain tactical advantage over the accused . . . deviates from elementary standards of fair play and decency required by the Due Process Clause of the Fifth Amendment." *United States v. Murphy*, 100 F.4th 1184, 1208 (10th Cir. 2024) (brackets, ellipsis, and internal quotation marks omitted).

Motions to dismiss for preindictment delay trigger a burden-shifting analysis. *Id.* at 1210. The first step requires the defendant to "make a prima facie showing that

the delay in charging him has actually prejudiced his ability to defend, and that this delay was intentionally or purposely designed and pursued by the Government to gain some tactical advantage over or to harass him."[1] *See id.* (internal quotation marks omitted).

Mr. Back claimed four categories of evidence had been lost because of the preindictment delay, but the district court concluded he failed to make a prima facie showing that the delay prejudiced him.

**Surveillance footage.** The government alleged Mr. Back arranged four drug deals (that turned out to be controlled buys) using a cell phone in prison. The delay in his prosecution, he said, prevented him from obtaining prison surveillance footage from the times he allegedly participated in the calls, footage that might have shown him not using a cell phone. Citing evidence that the prison routinely destroyed surveillance footage after thirty days, the district court concluded that a delay in prosecution did not cause the loss of footage. The footage would have been destroyed, the district court reasoned, before charges against Mr. Back "might reasonably have been brought." R. vol. 1 at 233.

**Death of a witness.** The government claimed Mr. Back made incriminating statements to another man in a recorded phone call. The other man on the call died in

---

[1] If the defendant makes this showing, then the government must present "evidence showing that the delay was not improperly motivated or unjustified." *United States v. Comosona*, 614 F.2d 695, 697 (10th Cir. 1980). When that occurs, the defendant "bears the ultimate burden of establishing the Government's due process violation by a preponderance of evidence." *Id.*

2022, preventing Mr. Back from using him as a witness.  As the court concluded, the mere possibility that the other man might have provided information helpful to Mr. Back fell short of actual prejudice.

*Photographs.*  The government lost photographs taken during the search of a storage unit that uncovered a safe containing drug residue and fake identification cards bearing Mr. Back's name.  For the most part, the district court concluded, Mr. Back never explained how the loss of the photographs prejudiced him.  And acknowledging Mr. Back's argument that the fake identification cards might show that someone else had been assuming his identity, the court concluded that the loss of photographs of the cards imposed no prejudice because the cards themselves still existed.

*State-court hearings.*  The confidential informant used to investigate Mr. Back had state-court hearings in 2023 that resulted in the dismissal of one felony case and a sentence modification in another case.  The delay in his prosecution, Mr. Back said, prevented his lawyer from attending the 2023 hearings to determine why the informant had received such favorable treatment.  The court found unsubstantiated Mr. Back's suggestion that the preindictment delay undermined his ability to impeach false or misleading testimony from the informant, and it concluded that "any minor detriment" to Mr. Back's case from his lawyer's inability to attend the informant's hearings did not amount to actual prejudice.  *Id.* at 236.

In addition to holding Mr. Back failed to make a prima facie showing of actual prejudice, the court concluded he failed to make a prima facie showing that the

reason for the delay was the government's desire to gain a tactical advantage or to harass Mr. Back.  And so it denied the motion to dismiss.

### III

We review the district court's decision to deny the motion to dismiss for an abuse of discretion.  *See Murphy*, 100 F.4th at 1208.

On appeal, Mr. Back maintains the preindictment delay "actually prejudiced his ability to mount a complete defense."  Aplt. Br. at 11.  But he never engages with the district court's reasoning.  *See Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015) ("The first task of an appellant is to explain to us why the district court's decision was wrong.").

We discern no abuse of discretion in the district court's determination that Mr. Back failed to make a prima facie showing of actual prejudice.  The evidence lost to Mr. Back was at most only potentially exculpatory.  In other words, his claims of prejudice are speculative on the record before us.  But in this context, "the defendant must show that he has suffered definite and not speculative prejudice."  *United States v. Garcia*, 74 F.4th 1073, 1099 (10th Cir. 2023) (per curiam) (internal quotation marks omitted).

Mr. Back is correct, of course, that actual prejudice from preindictment delay usually results from the loss of witnesses or physical evidence "or the impairment of their effective use at trial."  *Id.* at 1103 (internal quotation marks omitted).  "But the loss of evidence, without more, is insufficient to support a claim of unconstitutional pre-indictment delay."  *Id.*

5

Having decided that the district court correctly concluded Mr. Back failed to show actual prejudice, we need not consider whether it also correctly concluded he failed to show an improper motive for the preindictment delay.

IV

We next turn to Mr. Back's claim that the district court erred when it admitted statements of a coconspirator.

During the first controlled buy, the informant met a man named Gonzalo Duran to exchange money for drugs. At the meeting, Mr. Duran told the informant that he met Mr. Back in prison, that he later started working with Mr. Back, and that he and Mr. Back had "been doing pretty good together." R. vol. 1 at 473 (internal quotation marks omitted).

The district court concluded that the statements fell outside the definition of hearsay because they were statements by Mr. Back's "coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Before admitting a coconspirator's statements under Rule 801(d)(2)(E), a court must find "by a preponderance of the evidence that (1) a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, and (3) the statements were made in the course of and in furtherance of the conspiracy." *United States v. Otuonye*, 995 F.3d 1191, 1204 (10th Cir. 2021) (internal quotation marks omitted).

Mr. Back challenges only the court's finding that Mr. Duran made the statements in furtherance of the conspiracy. Although we review the ultimate decision to admit evidence for an abuse of discretion, we review preliminary factual

6

findings—such as whether statements were made in furtherance of a conspiracy—for clear error. *See United States v. Morgan*, 748 F.3d 1024, 1036 (10th Cir. 2014). We will reverse under the deferential clear-error standard only if we form "a definite and firm conviction that a mistake has been made." *United States v. Martinez*, 92 F.4th 1213, 1227 (10th Cir. 2024) (internal quotation marks omitted). If the district court's "account of the evidence is plausible in light of the record viewed in its entirety, we may not reverse it even if we might have weighed the evidence differently." *Id.* (internal quotation marks omitted).

A statement is "made in furtherance of a conspiracy when it is intended to promote the conspiratorial objectives." *United States v. Rutland*, 705 F.3d 1238, 1252 (10th Cir. 2013) (internal quotation marks omitted). We have identified several types of statements that might further a conspiracy, including "statements made to induce enlistment or further participation in the group's activities" and statements intended to allay a coconspirator's fears. *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (internal quotation marks omitted). Statements do not further a conspiracy, however, if they amount to "mere narratives, that is statements relating to past events, even those connected with the operation of the conspiracy where the statement serves no immediate or future conspiratorial purpose." *Id.* (internal quotation marks omitted).

The district court found Mr. Duran made the contested statements in furtherance of the conspiracy because the statements helped establish Mr. Duran as

Mr. Back's "legitimate agent and to encourage" the informant to continue to buy drugs from Mr. Back and Mr. Duran. R. vol. 1 at 478.

We see no clear error in this finding. The informant had arranged to purchase drugs from Mr. Back, but had to make the physical exchange of money for drugs with an intermediary (Mr. Duran) because Mr. Back himself was in prison. Those circumstances permit the finding that, in describing his relationship with Mr. Back, Mr. Duran intended to make the informant comfortable proceeding with the drug deal.

Mr. Back resists this conclusion. He emphasizes the informant never questioned the authenticity of Mr. Duran's relationship with Mr. Back or suggested she needed assurances to continue buying drugs from the men. For that reason, Mr. Back says, Mr. Duran's statements amounted to the type of "idle chatter" that does nothing to further conspiracies. *Perez*, 989 F.2d at 1578 (internal quotation marks omitted).

Mr. Back's position is well taken as a general matter. We accept that the record *could* support a finding that Mr. Duran's statements were indeed mere idle chatter. But the district court made a different finding, and the record supports it. Our focus remains Mr. Duran's "intent" in making the statements. *Id.* And the evidence permits the view that Mr. Duran made the contested statements to provide assurances to the informant even though she never sought any. In short, we see at least two permissible views of the evidence. The district court's "choice between

8

them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

*     *     *

The district court's judgment is affirmed.

Entered for the Court

Veronica S. Rossman
Circuit Judge